UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEETH EUGUENE LUCAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:20-cv-00653-TWP-MJD |
| KATHY ALVEY, FRANK WOODS, and BETH FAUST, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Kathy Alvey ("Warden Alvey"), Frank Woods ("Mr. Woods"), and Beth Faust ("Ms. Faust") (collectively, "Defendants") (Dkt. 45). Plaintiff Keeth Euguene Lucas ("Mr. Lucas"), an inmate in the Indiana Department of Correction, filed this action alleging that (1) Defendants exhibited deliberate indifference to his safety, and (2) Defendants Kathy Alvey and Frank Woods retaliated against him after he filed grievances about hazardous conditions. For the reasons stated below, the Defendants' Motion for Summary Judgment is **granted**.

### I. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S. Ct. 1348 (1986). *See* Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder

could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

Mr. Lucas failed to respond to the summary judgment motion. Accordingly, the facts alleged in the Motion are "admitted without controversy" so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1(f); *see also* S.D. Ind. L.R. 56-1(b) (party opposing summary judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

## II.  SUMMARY JUDGMENT EVIDENCE

Mr. Lucas has been incarcerated since July 2015,[1] and he was housed at Branchville Correctional Facility ("Branchville") during the time relevant to the allegations in his Complaint. (Dkt. 47-1 at 14.) Warden Alvey was the Warden at Branchville during Mr. Lucas' incarceration, (Dkt. 47-16 at ¶ 2), and Mr. Woods was the Safety Hazard Manager, (Dkt. 47-14 at ¶ 1.) In August 2017, Mr. Lucas began working in the Pallet Shop at Branchville.[2] (Dkt. 47-1 at 18-19.) Ms.

---

[1] Mr. Lucas has been released from incarceration since filing his complaint. *See* Indiana Dep't of Corr., *Offender Data*, available at www.in.gov/apps/indcorrection/ofs/ofs (last visited March 8, 2022).

[2] The Pallet Shop was part of Indiana Correctional Industries, a division of the Indiana Department of Correction. (Dkt. 47-10 at ¶¶ 1-5.) Inmates who worked in the Pallet Shop would make pallets and crates for A1 Pallet of Clarksville Co., a joint venture partner. *Id.*

Faust worked as a foreman and supervisor at the Pallet Shop, (Dkt. 47-10 at ¶ 1), and she was the supervisor on the day of the incident giving rise to Mr. Lucas' complaint, (Dkt. 47-1 at 24.)

Although Mr. Lucas served as a dragger and stacker when he first started working in the Pallet Shop, he worked his way up to become a crate builder. (Dkt. 47-1 at 18-19.) As a crate builder, he used wood to make crates of different sizes, and he used a table saw, nail gun, tape measure, and hammer to build the crates. (Dkt. 47-1 at 26, 29.) In October 2018, he signed a document that outlined the safety instructions for using a Northfield brand table saw. (Dkt. 47-3; Dkt. 47-1 at 60.) These instructions highlighted the need to put the guard in position before operating the machine, to use a push stick when cutting narrow pieces of wood, and to clear scrap pieces of wood with a scrap stick. (Dkt. 47-3.)

On September 11, 2019, Ms. Faust sent an email requesting a new guard for the Northfield table saw because there was a crack on the current guard. (Dkt. 47-10 at ¶¶ 7-11.) The table saw was not removed from use, however, and Mr. Lucas was severely injured while using it on September 26, 2019.

At the time of his injury, Mr. Lucas was attempting to build a crate using materials cut by another inmate, but the dimensions of the cut wood were wrong. (Dkt. 47-1 at 98.) When he used the Northfield table saw to cut wood with the correct dimensions, he cut the index and long fingers on his right hand. (Dkt. 47-8; Dkt. 47-9.) The wood in Mr. Lucas hand got caught on the guard and pulled his hand into the blade. (Dkt. 47-1 at 101-03.) The guard on the table saw was "mangled and duct taped, and the whole side of it was gone." *Id.* at 103. Mr. Lucas sustained "complex lacerations" to his index and long fingers, and both fingers were broken. (Dkt. 47-9.) He reported the injury to his supervisor Kelly Terry, (Dkt. 47-8 at 2), and he was eventually sent

to a hospital for treatment, *id.* at 3. Mr. Lucas remained under a doctor's care until the end of November 2019. (Dkt. 47-1 at 113.)

After the incident, the Northfield table saw was "tagged out" until it could be inspected. (Dkt. 47-10 at ¶ 14.) An inspection was done the day after Mr. Lucas' injury, and "the guards were found to be in place and in working condition." (Dkt. 47-14 at ¶ 11.) The Office of Investigations and Intelligence also investigated the incident and concluded that the incident was a result of Mr. Lucas' failure to follow safety protocols rather than the result of faulty equipment.[3] (Dkt. 47-2.)

Approximately a week after the incident, the Safety Hazard Committee met to review the incident and discuss Mr. Lucas' job placement. (Dkt. 47-14 at ¶ 13.) Warden Alvey and Mr. Woods attended this meeting. *Id.* at ¶ 14; Dkt. 47-16 at ¶ 10. The Safety Hazard Committee acknowledged Mr. Lucas' frequent injuries[4] and the increasing severity of his injuries. (Dkt. 47-14 at ¶ 20; Dkt. 47-16 at ¶ 9.) Because of the pattern of injuries, the Safety Hazard Committee recommended that Mr. Lucas "be moved to a work position that does not require the operation of high velocity machinery, or the use of tools with hydraulic, pneumatic, or air powered origin." (Dkt. 47-14 at ¶ 24; Dkt. 47-16 at ¶ 12; *see also* Dkt. 47-18.) This recommendation was submitted to the classification department, (Dkt. 47-16 at ¶ 14), and in December 2019, Mr. Lucas was transferred to a Level 1 facility, (Dkt. 47-1 at 113-14). At the Level 1 facility, Mr. Lucas was allowed to work in the community. *Id.* A Level 1 facility is the lowest level an inmate can go to before being released, and it is for nonviolent and short-term inmates. *Id.*

---

[3] An inmate working with Mr. Lucas at the time he was injured stated that the guard was "in an upward stance" and the incident would not have happened if Mr. Lucas had "placed the guard in the proper position." (Dkt. 47-2 at 4.) Other inmates who worked in the Pallet Shop reported that Mr. Lucas was "a hard worker, but [] is dangerous to himself." *Id.*

[4] Mr. Lucas had sustained a broken toe and a possible dislocated joint while working at the Pallet Shop. He was also responsible for shooting another inmate with a nail gun. (Dkts. 47-5, 47-6, and 47-7.)

### III.  ANALYSIS

Mr. Lucas has asserted two claims: (1) an Eighth Amendment deliberate indifference claim against Warden Alvey, Mr. Woods, and Ms. Faust, and (2) a First Amendment retaliation claim against Warden Alvey and Mr. Woods.  (*See* Dkt. 7.)  For the reasons explained below, the Defendants are entitled to judgment as a matter of law on both claims.

A.  **Eighth Amendment Deliberate Indifference**

"Prisons are not required to provide a maximally safe environment, but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (cleaned up).  A prison official "violates the Eighth Amendment upon exhibiting 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).

"A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they created 'an excessive risk to the inmate's health and safety.'" *Id.* (cleaned up).  Subjectively, "the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Id.*  Applying these standards to Mr. Lucas' claims, the Defendants are entitled to judgment as a matter of law.

The Defendants are entitled to summary judgment because there is no evidence that the guard on the Northfield table saw presented an excessive risk to Mr. Lucas' health and safety.  Mr. Lucas stated at his deposition that the guard was "mangled" and "the whole side of it was gone." (Dkt. 47-1 at 103.)  Even accepting this assertion as true, Mr. Lucas has presented no evidence to establish that a broken, mangled guard created an excessive risk to his safety.  The designated

evidence shows the inspection conducted the day after the incident found the guard "to be in place and in working condition." (Dkt. 47-14 at ¶ 11.) Without evidence that a broken guard created a safety risk, there is no evidence of a condition that is "sufficiently serious as an objective matter." *Thomas*, 2 F.4th at 719. The Defendants' motion for summary judgment on the Eighth Amendment claim is **granted**.

### B. First Amendment Retaliation

Mr. Lucas' second claim alleges that Warden Alvey and Mr. Woods retaliated in violation of the First Amendment after Mr. Lucas filed grievances complaining about the conditions in the Pallet Shop. To prevail on a First Amendment retaliation claim, Mr. Lucas must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017). The Defendants' request for judgment as a matter of law on this claim is **granted** because there is no evidence that Mr. Lucas suffered a deprivation likely to deter First Amendment activity.

When analyzing whether a deprivation would likely deter First Amendment activity, courts apply an objective test: "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, [courts] can resolve the issue as a matter of law." *Id.* at 647.

As in *Douglas*, *id.*, Mr. Lucas "did not provide evidence of any deprivation inflicted by" Warden Alvey or Mr. Woods. Although he was transferred to another facility, "a transfer from one prison to another, on its own, without some additional aggravating factor, such as relocation

to a much more restrictive or dangerous environment, is not likely to deter protected activity." *Id.* The record establishes that Mr. Lucas was not transferred to a more restrictive or dangerous environment. Instead, he was moved to a lower level facility that provided more independence. (Dkt. 47-1 at 113-14.) Additionally, although Mr. Lucas was removed from his employment at the Pallet Shop, he has been employed since his transfer. *Id.* at 115.

Because there is no evidence in the record to demonstrate that Mr. Lucas suffered a deprivation likely to deter First Amendment activity, his First Amendment retaliation claim fails. The Defendants' motion for summary judgment is **granted** as to this claim.

## IV. CONCLUSION

The Court has empathy that Mr. Lucas suffered a serious injury to his hand, however, there is no evidence of a condition that created an excessive risk to inmate health and safety and there is no evidence that Mr. Lucas's suffered a deprivation that was objectively serious enough to deter First Amendment activity. For the reasons state above, the Defendants' Motion for Summary Judgment, Dkt. [45], is **GRANTED**. Judgment consistent with this Order and the screening Order, Dkt. [7], shall now issue.

**SO ORDERED.**

Date: 3/11/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Keeth Euguene Lucas, #167820
VOA Hope House
811 Franklin Street
Evansville, Indiana  47111

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL'S OFFICE
gustavo.jimenez@atg.in.gov